GORDON SILVER
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gordonsilver.com
TALITHA B. GRAY, ESQ.
Nevada Bar No. 9040
E-mail: tgray@gordonsilver.com
CANDACE C. CLARK, ESQ.
Nevada Bar No. 11539
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
Attorneys for Lisa Poulin, Trustee for
USA Investment Partners, LLC

E-Filed On  3-12-10

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

In re:

USA INVESTMENT PARTNERS, LLC,

        Debtor.

Case No.: BK-S-07-11821-LBR
Chapter 11

Date:  April 22, 2010
Time:  9:30 a.m.

## MOTION TO APPROVE SALE OF MEMBERSHIP INTEREST IN HOUSING PARTNERS, LLC PURSUANT TO 11 U.S.C. § 363

Lisa M. Poulin, the Chapter[1] 11 trustee ("Trustee") of USA Investment Partners, LLC ("Debtor"), by and through her counsel, the law firm of Gordon Silver, hereby submits her Motion To Approve Sale Of Membership Interest In Housing Partners, LLC Pursuant To 11 U.S.C. § 363 (the "Motion") in the above-referenced bankruptcy case.  The Motion seeks approval of the sale of Debtor's membership interest in Housing Partners, LLC, a Nevada limited liability company ("Housing Partners") to Twinleaf Homes, LLC, a California limited liability company ("Twinleaf") pursuant to that certain Agreement For Purchase And Sale Of Membership Interest In Housing Partners, LLC (the "Sale Agreement"), attached as Exhibit "A" to the Poulin Declaration (defined below) and incorporated herein by this reference.

---

[1] Unless otherwise expressly stated herein, all references to Chapters or Sections shall refer to 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and all Rule references shall refer to the Federal Rules of Bankruptcy Procedure, 1001-9037 (the "Bankruptcy Rules").

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-001/796087_2

This Motion is made pursuant to Section 363 and is based on the points and authorities stated herein, the <u>Declaration Of Lisa M. Poulin In Support Of Motion To Approve Sale Of Membership Interest In Housing Partners, LLC Pursuant To 11 U.S.C. § 363</u> (the "Poulin Declaration"), the pleadings, papers, and other records on file with the clerk of the above-captioned Court, judicial notice of which is hereby respectfully requested, and the argument of counsel entertained by the Court at the time of the hearing of the Motion.

**POINTS AND AUTHORITIES**

**I.**
**STATEMENT OF PERTINENT FACTS**

**A.**    **The Commencement Of Debtor's Bankruptcy Case And Trustee's Appointment.**

1.  On April 4, 2007 (the "Petition Date"), USA Capital Diversified Trust Deed Fund, LLC, the USACM Liquidating Trust, and Alabruj Investments, LLC filed an involuntary Chapter 11 petition against Debtor, thereby commencing the above-captioned bankruptcy case (the "Bankruptcy Case"). <u>See</u> Involuntary Petition, docket no. 1. Two days after the commencement of the Bankruptcy Case, on April 6, 2007, the Court appointed Trustee as Debtor's interim Chapter 11 trustee. <u>See</u> docket nos. 13 and 14. Thereafter, on May 9, 2007, an order for relief was entered in the Bankruptcy Case, with Trustee becoming Debtor's permanent Chapter 11 trustee. <u>See</u> docket no. 101.

2.  Debtor is a limited liability company created to hold ownership interests in and manage the affairs of other companies, including Housing Partners. <u>See</u> Poulin Declaration ¶ 3.

**B.**    **Housing Partners' Membership And Operations.**

3.  Housing Partners is a Nevada limited liability company managed by Debtor, whose sole member is Debtor. Trustee is not aware of any UCC-1 financing statements having been recorded against Debtor's membership interest in Housing Partners and Trustee is unaware of any lien otherwise asserted against Debtor's membership interest in Housing Partners. <u>See</u> <u>id.</u> ¶ 4.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-001/796087_2

2

4.  Housing Partners was formed to engage in the business of real estate acquisition, sales, and development.  Consistent therewith, Housing Partners acts as a holding company for various single-purpose subsidiaries engaged in such real estate projects and does not own substantial property outside of membership interests in these subsidiaries.  See id. ¶ 5.

5.  On the Petition Date, Housing Partners held membership interests in the following subsidiaries (collectively, the "Subsidiaries"), which are managed by USA Investors II, LLC[2] (Housing Partners' percentage membership interest follows each Subsidiary name):

        a)      Aware TM 30850, LLC ("Aware") (75%)

        b)      Campo Land Investment, LLC ("Campo") (67.5%)

        c)      Soda Flats, LLC ("Soda Flats") (50%)

        d)      South California Land Development, LLC ("SCLD") (67.5%)

        e)      Tanamera Homes, LLC ("Tanamera Homes") (50%)

        f)      Tanamera Residential, LLC ("Tanamera Residential") (50%)

        g)      Willowbrook Residential, LLC ("Willowbrook") (50%)

For each of the above entities, Builders Capital, Inc., a California corporation ("Builders Capital") owns the remaining membership interest unowned by Housing Partners, with the sole exception of Soda Flats, whose equal members are Debtor and Anthony and Sue Monaco.  See id. ¶ 6.

6.  Both Builders Capital and Twinleaf are comprised of substantially similar ownership or membership interests.  See id. ¶ 7.

**C.  Background Regarding The Sale Agreement.**

7.  Since the Petition Date, Trustee and her retained professionals have visited the properties owned by the Subsidiaries and reviewed all available consolidated financial projections to determine the value of Debtor's membership interest in Housing Partners and the proper course of action for managing or selling Debtor's membership interest, in order to maximize its value for Debtor's estate.  Trustee's review indicates that for those Subsidiaries that

---

[2] USA Investors II, LLC's members are Debtor (95%) and Twinleaf Homes, LLC (5%).

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-001/796087_2

3

1    still retain real estate property as tangible assets, development of such property is far from

2    complete, and will require additional funding through Housing Partners or other sources to

3    complete each respective project. See id. ¶ 8.

4         8.    Specifically, Housing Partners' consolidated liabilities significantly exceed its assets.[3]

5    Further, few of the Subsidiaries arguably have any value:

6              a)    Campo's primary asset is 284 acres of land near Campo, California, which

7              is vacant and has not been approved for division into parcels. The land is fully

8              encumbered by construction loans and amounts payable to affiliates.

9              b)    On the Petition Date, Tanamera Homes served as a holding company for

10             six wholly-owned single-purpose entities engaged in real estate development.

11             Each of Tanamera Homes' subsidiaries hold no tangible assets, are in bankruptcy,

12             or have had their property foreclosed upon. As such, many of the entities have

13             since been dissolved. Thus, Tanamera Homes has net liabilities significantly in

14             excess of its assets.[4]

15             c)    Soda Flats, Aware, SCLD, Tanamera Residential, and Willowbrook hold

16             no tangible assets. Of these entities, only Soda Flats and Aware may hold some

17             value; Soda Flats retains a right to the recovery of certain escrow sale holdbacks

18             from the sale of its property, while Aware also sold its property and may have a

19             contingent right to collect up to $2 million in holdbacks in the unlikely

20             circumstance that the sold project, which has not been significantly improved

21             from a raw state, is further developed to the point that housing permits can be

22             obtained.

23   _____

24   [3] Trustee's professionals have conducted valuations as of May 2006, which valuations reflect assets valued at
     approximately $42 million to $50 million, and consolidated liabilities valued at approximately $57 million. As the
     real estate market has plummeted, and many of the Subsidiary entities' assets have been foreclosed upon, Housing

25   Partners' assets were less than $42 to $50 Million on the Petition Date and have continued to exponentially decease
     in value.

26
     [4] Trustee's professionals' valuation of these net liabilities as of May 2006 was approximately $5.2 million to $19.3

27   million.    Tanamera Homes' subsidiaries are: Ravenswood Apple Valley, LLC, Brentwood 128, LLC,
     Tanamera/Roripaugh, LLC, Tanamera/Roripaugh II, LLC, Traditions at Roripaugh, LLC, and Savannah Homes,

28   LLC.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-001/796087_2                                                                  4

See id. ¶ 9.

9. Completion of development of any property retained by the Subsidiaries will require additional construction loan funding which Debtor is not in a position to provide; Trustee does not believe it would be in the estate's best interests to make such contributions if required. Additionally, there is risk of foreclosure relating to the properties still retained by the Subsidiaries. See id. ¶ 10.

10. Furthermore, Housing Partners has other significant liabilities. Housing Partners is responsible as guarantor for a number of unpaid loans entered into by its Subsidiaries and affiliates, which Subsidiaries are unable to satisfy the loan obligations. Housing Partners is a guarantor on the following liabilities, among these:

| Borrower | Other Guarantors | Date | Principal Sum |
|---|---|---|---|
| SCLD[5] | None | March 8, 2006 | $2,751,367 |
| Tanamera/Roripaugh II, LLC[6] | Debtor, Joseph Milanowski, Milanowski 1998 Trust | October 26, 2005 | $3,595,000 |
| Traditions at Roripaugh, LLC[7] | Tanamera Homes | January 5, 2006 | $14,612,000 |
| Traditions at Roripaugh, LLC[8] | Debtor, Joseph Milanowski, Milanowski 1998 Trust | January 2, 2006 | $4,930,000 |
| Tanamera/Roripaugh, LLC[9] | Tanamera Homes, Joseph Milanowski | March 2006 | $6,100,000 |
| Tanamera/Roripaugh II, LLC | Joseph Milanowski, Milanowski 1998 Trust | October 31, 2005 | $11,920,000 |

Housing Partners may also be liable for judgments entered against it in relation to these or other liabilities. See id. ¶ 11.

11. Consequently, there does not appear to be any likelihood of realizing any value for Debtor's equity interest in Housing Partners as its liabilities far exceed its assets. See id. ¶ 12.

12. Trustee believes that a sale of Debtor's membership interest at any price would benefit the estate, as such a sale would provide cash to the estate that does not appear likely to

---

[5] The properties securing this note are in various stages of foreclosure.

[6] The property securing this note was foreclosed upon by the first position lienholder.

[7] This property securing this note was foreclosed upon by the first position lienholder.

[8] The property securing this note was foreclosed upon by the first position lienholder.

[9] This property securing this note was foreclosed upon by the first position lienholder.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-001/796087_2

5

1   materialize should Debtor retain its membership interest in Housing Partners, and would also

2   divest Debtor of any issues relating to continued possession of its membership interest, including

3   any future funding obligations required of members of the Subsidiaries and the preparation of tax

4   returns.  See id. ¶ 13.

5        13. Upon Twinleaf's offer to purchase Debtor's membership interest, purchase and sale

6   negotiations and due diligence ensued that culminated in the Sale Agreement.  Due to the close

7   relationship between Twinleaf and Builders Capital, which possesses the outstanding ownership

8   in the majority of the Subsidiaries, Twinleaf appears to have an unmatched, exclusive interest in

9   continuing the development of the Property.  Twinleaf's acquisition of the interest in the

10   Subsidiaries vests Builders Capital and Twinleaf, as affiliate companies, with exclusive

11   ownership of each of the Subsidiaries (except Soda Flats) upon consummation of the Sale

12   Agreement.  Provided Trustee's extensive efforts to realize any value for Debtor's membership

13   interest in Housing Partners, Trustee has concluded that there is simply no market for the

14   purchase of Debtor's membership interest.  Trustee therefore believes Twinleaf's offer

15   constitutes a unique opportunity for Debtor to sell its membership interest in Housing Partners

16   for value, rather than potentially lose value, as Housing Partners lacks value for its member; thus

17   further marketing efforts have been deemed unnecessary, costly, and unproductive.  See id. ¶ 14.

18   **D.**     **The Proposed Sale Of Debtor's Membership Interest In Housing Partners.**

19        14. Pursuant to the proposed Sale Agreement, Trustee, on behalf of Debtor, will sell

20   Debtor's membership interest in Housing Partners to Twinleaf for a purchase price of Ten

21   Thousand Dollars ($10,000.00), paid in cash.  See Sale Agreement ¶¶ 2, 3(a)(1)(i).

22        15. Consummation of the Sale Agreement is conditioned upon the entry of an order by

23   this Court approving the sale of Debtor's membership interest free and clear of any liens and

24   interests pursuant to Sections 105(a) and 363(f).  See id. ¶ 5(a).

25        16. Trustee is informed and believes that the Sale Agreement is fair and reasonable, and

26   that the sale of Debtor's membership interest in Housing Partners is being made in good faith,

27   without fraud, collusion, or unfair advantage, and without improper conduct or ulterior motive.

28   Furthermore, the negotiations relating to the sale of the membership interest have been engaged

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-001/796087_2

in at arms-length and without side agreements, arrangements, or understandings between Trustee and Twinleaf.  See Poulin Declaration ¶ 15.

       17. Based upon Trustee's evaluation of Housing Partners' consolidated prospective entity value, Trustee believes that the sale of Debtor's membership interest in Housing Partners for the requested price is proper, fair, and reasonable.  Specifically, Trustee believes that the price for the membership interest reflects value in excess of Debtor's stake in Housing Partners.  See id. ¶ 16.

       18. Sale of Debtor's membership interest in Housing Partners will further benefit Debtor by allowing Debtor to divest itself of a significant noncash asset for value, to provide funds for distribution to Debtor's creditors.  See id. ¶ 17.

## II.
## JURISDICTION AND VENUE

       19. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(a). Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N) and is a proceeding arising in the Bankruptcy Case.  The statutory basis for the relief sought herein is Sections 105 and 363.  Venue of the Bankruptcy Case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.
## LEGAL ARGUMENT

**A.**    **The Sale Agreement Should Be Approved Pursuant to Section 363.**

     **1.**    **Section 363(b) permits the sale of assets outside of the ordinary course of business where a valid business justification exists.**

       Section 363(b)(1) authorizes a trustee to sell property of the estate outside of the ordinary course of business after notice and a hearing.  See 11 U.S.C. § 363(b)(1).  In such cases, a good business reason must be shown to grant the request.  See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1069-71 (2d Cir. 1983); Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988);  see also In re 240 North Brand Partners, Ltd., 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) (citing Lionel for the proposition that

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-001/796087_2

7

"debtors who wish to utilize § 363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification").

In examining a debtor's business justification for a sale of estate assets, the Second Circuit expounded that:

> [i]n fashioning its findings, a bankruptcy judge must not blindly follow the hue and cry of the most vocal special interest groups; rather he should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders alike.  He might, for example, look to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value.  This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

In re Lionel, 722 F.2d at 1071.

Consistent with the foregoing, bankruptcy courts consider a wide range of factors, generally including the following:

    (1)    Whether a sufficient business reason exists for the sale;

    (2)    Whether the proposed sale is in the best interest of the estate, which considers the following factors:

        (a)    that terms of the sale are fair and reasonable;

        (b)    that the proposed sale has been adequately marketed;

        (c)    that the proposed sales terms have been properly negotiated and proposed in good faith; and

        (d)    that the purchaser is involved in an "arms-length" transaction with the seller; and

    (3)    Whether notice of the sale was sufficient.

See generally In re Walter, 83 B.R. at 19-20 ("there must be some articulated business justification for using, selling or leasing the property outside the ordinary course of business . . ..").

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-001/796087_2

1      As the Second Circuit held in <u>In re Lionel Corp.</u>, 722 F.2d 1063 (2d Cir. 1983), the

2   bankruptcy court should consider all salient factors pertaining to the proceeding and,

3   accordingly, act to further the diverse interest of the debtor, creditors and equity holders, alike.

4   It is not necessary for the bankruptcy court to consider each factor listed in the cases, or to use

5   any specific set of factors.  <u>See</u> <u>240 North Brand Partners, Ltd. v. Colony GFP Partners (In re</u>

6   <u>240 North Brand Partners, Ltd.)</u>, 200 B.R. at 659; <u>In re Work Recovery, Inc.</u>, 202 B.R. 301, 304

7   (Bankr. D. Ariz. 1996) (using a six factor-test); <u>In re Country Manor of Kenton, Inc.</u>, 172 B.R.

8   217, 221 (Bankr. N.D. Ohio 1994) (using a four-factor test).  Moreover, to the extent that any

9   factors are utilized, there is no necessity that those factors must be given equal weight to

10  determine the outcome.  <u>See</u> <u>Matter of Embrace Systems Corp.</u>, 178 B.R. 112 (Bankr. W.D.

11  Mich. 1995) (citing <u>In re Lionel Corp.</u>, 772 F.2d at 1071 and <u>Stephens Indus., Inc. v. McClung</u>,

12  789 F.2d 386 (6th Cir. 1986)).

13      However, in ruling on a motion to sell assets outside of the ordinary course of business,

14  courts recognize that the debtor's application of its sound business judgment in the use, sale, or

15  lease of property is subject to great judicial deference.  <u>See, e.g.</u>, <u>Simantob v. Claims Prosecutor,</u>

16  <u>LLC (In re Lahijani)</u>, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005); <u>In re Canyon Partnership</u>, 55

17  B.R. 520, 524 (Bankr. S.D. Cal. 1985); <u>In re Lionel Corp.</u>, 722 F.2d at 1070 ("[T]here must be

18  some articulate business justification, other than appeasement of major creditors.").  In the case

19  at hand, Trustee's decision to sell Debtor's membership interest in Housing Partners is supported

20  by a sufficient business justification.

21      **2.**    <u>**Trustee has demonstrated a valid business justification for the sale of**</u>
                <u>**Debtor's membership interest outside of the ordinary course of business.**</u>

22      The sale of Debtor's membership interest in Housing Partners should be approved as the

23  sale of the membership interest allows Debtor to liquidate certain noncash assets for their

24  ultimate distribution to Debtor's creditors through a Chapter 11 plan of reorganization.  As

25  previously stated, it does not appear that there is any value for Debtor as Housing Partners' sole

26  member.  Thus, in order to maximize the value of Debtor's membership interest in Housing

27  Partners, Trustee has entered into the Sale Agreement, thereby permitting the liquidation of

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-001/796087_2

9

1    Debtor's membership interest for an amount that can supplement Debtor's estate. Twinleaf is

2    the only available purchaser of Debtor's membership interest, as such acquisition provides a

3    direct benefit to one of its affiliate companies, Builder Capital, which already owns membership

4    interests in the Subsidiaries (excluding Soda Flats) and, thus, retains some interest in the

5    financial well-being of the Subsidiaries. Because Twinleaf's offer presents a unique opportunity

6    for Trustee to obtain positive value out of Debtor's interest, marketing efforts are unnecessary

7    here; rather, Trustee believes that any continued delay in selling Debtor's membership interest

8    will decrease the likelihood that a comparable sales price could be obtained despite incurring

9    additional marketing costs and related fees.

10         The sale of the membership interest was negotiated over significant discussions, and after

11    deliberation and review of potential options by Trustee. The proposed Sale Agreement terms

12    have been properly negotiated and proposed in good faith, and were negotiated at arms-length

13    with Twinleaf. In determining to enter into the Sale Agreement with Twinleaf, Trustee

14    concluded that the purchase price and other terms offered by Twinleaf are the best available in

15    terms of net benefit for Debtor's estate. Trustee believes that in light of Housing Partners'

16    current status, sale of the membership interest is a favorable option for Debtor. Furthermore,

17    completion of the proposed sale now avoids significant additional costs that could otherwise be

18    incurred by the estate in retaining the membership interest, including future contribution

19    requirements, costs in monitoring and managing Debtor's interest in Housing Partners, and costs

20    of preparing subsequent tax returns. As neither Housing Partners nor the majority of the

21    Subsidiaries have sufficient funds to pay for the preparation of such entities' tax returns, such

22    costs are borne by their members, including Debtor. Thus, the prompt sale of Debtor's interest

23    in Housing Partners will alleviate the need to incur tens of thousands of dollars in tax return

24    preparation in the up-coming months.

25         Because the proposed sale of Debtor's membership interest in Housing Partners is within

26    Trustee's sound business judgment, has a valid business justification, and is in the best interest of

27    Debtor's estate, the Sale Agreement should be approved.

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-001/796087_2

10

**3.    The sale should be approved free and clear of liens pursuant to Section 363(f).**

Once the Court determines that a valid business justification exists for the sale, thus permitting the sale of estate assets prior to confirmation of a plan of reorganization, the Court must determine whether such sale can be made free and clear of existing liens. Section 363(f) governs the sale of property of the estate free and clear of liens and provides, in pertinent part, as follows:

> (f)    The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate only if --
>
> (1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2)    such entity consents;
>
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    such interest is in bona fide dispute; or
>
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Section 363(f) is written in the disjunctive; thus, satisfaction of any one (1) of the five (5) conditions is sufficient to sell Debtor's membership interest free and clear of any liens. See, e.g., Citicorp Mortgage, Inc. v. Brooks (In re Ex-Cel Concrete Co.), 178 B.R. 198, 203 n.7 (B.A.P. 9th Cir. 1995); Citicorp Homeowners Svcs., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988).

First, pursuant to Section 363(f)(2), to the extent a secured creditor or lienholder that receives notice does not file a written objection to this Motion, such party should be deemed to have consented to the sale of the assets. See In re Metropolitan Mortgage & Securities Co., 2007 WL 2277573 at *4 (Bankr. E.D. Wash. 2007); In re Congoleum Corp., 2007 WL 1428477 at *1 (Bankr. D.N.J. 2007); In re Elliot, 94 B.R. at 345-46.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-001/796087_2

11

1    Second, pursuant to Section 363(f)(4), to the extent that a lien not of record is asserted

2    against the assets, such lien is subject to a bona fide dispute. Accordingly, the sale can and

3    should be authorized free and clear of such liens. See <u>In re Bedford Square Assocs., LP</u>, 247

4    B.R. 140, 144-45 (Bankr. E.D. Pa. 2000); <u>In re Octagon Roofing</u>, 123 B.R. 583 (Bankr. N.D. Ill.

5    1991). A bankruptcy court must determine whether there is an objective basis for either a factual

6    or a legal dispute as to the validity of debt, but need not determine the outcome of any dispute,

7    only its presence or absence. See <u>In re Vortex Fishing Systems, Inc.</u>, 277 F.3d 1057, 1064 (9th

8    Cir. 2002) (applying this standard for purposes of determining bona fide dispute under Section

9    303); <u>Austein v. Schwartz (In re Gerwer)</u>, 898 F.2d 730, 733 (9th Cir. 1990) (looking for

10   evidence suggesting a defect in claim for purposes of Section 363(f)(4)).

11   Finally, Trustee reserves the right to assert that Trustee may sell under Section 363(f)(5)

12   if it becomes necessary to resort to that provision.

13   In this instance, Trustee is not aware of any UCC-1 financing statements having been

14   recorded against Debtor's membership interest in Housing Partners and Trustee is unaware of

15   any lien otherwise asserted against Debtor's membership interest in Housing Partners. See

16   Poulin Declaration ¶ 4. Nonetheless, as Twinleaf has required that any sale of Debtor's

17   membership interest in Housing Partners be free and clear of all liens, Trustee seeks to sell

18   Debtor's membership interest in Housing Partners free and clear of all liens pursuant to Section

19   363(f)(2), (4), and/or (5).

20   **4.    The Sale Agreement has been proposed in good faith.**

21   In addition to proving that the proposed sale has a valid business justification, the trustee

22   must also show that the sale is proposed in good faith. See <u>In re 240 North Brand Partners, Ltd.</u>,

23   200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) (citing <u>In re Wilde Horse Enters., Inc.</u>, 136 B.R. 830,

24   841 (Bankr. C.D. Cal. 1991)). "'Good faith' encompasses fair value, and further speaks to the

25   integrity of the transaction. Typical 'bad faith' or misconduct would include collusion between

26   the seller and buyer, or any attempt to take unfair advantage of other potential purchasers." <u>Id.</u>

27   (quoting <u>Wilde Horse Enters., Inc.</u>, 136 B.R. at 842); <u>see also</u> <u>Ewell v. Diebert (In re Ewell)</u>, 958

28   F.2d 276, 280 (9th Cir. 1992); <u>Community Thrift & Loan v. Suchy (In re Suchy)</u>, 786 F.2d 900,

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-001/796087_2

12

902 (9th Cir. 1985) ("Typically, lack of good faith is shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.").

The purpose of the good faith finding is to facilitate the operation of Section 363(m), which provides a safe harbor for purchasers or lessees of a debtor's property when the transaction is made in "good faith." Specifically, Section 363(m) provides as follows:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of the sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

Section 363(m) serves the important purposes both of encouraging good faith transactions and of preserving the finality of the bankruptcy court's orders unless stayed pending appeal. See In re Onouli-Kona Land Co., 846 F.2d 1170 (9th Cir. 1988) ("the primary goal of the mootness rule is to protect the interest of a good faith purchaser . . . of the property, thereby assuring finality of sales.") (quotations omitted); In re Victoria Station Inc., 88 B.R. 231, 234 (B.A.P. 9th Cir. 1988).

In this case, Twinleaf is entitled to the safe harbor provided by Section 363(m). The negotiations were at all times conducted at arms-length and in good faith; there are no side agreements, arrangements, or understandings between Trustee and Twinleaf or its representatives. See Poulin Declaration ¶ 15. In short, there is no consideration for the contemplated sale of Debtor's membership interest in Housing Partners other than as set forth in the Sale Agreement. See id.

Trustee acts with the intent of obtaining the best possible recovery for Debtor's estate, both in terms of maximizing return and in structuring a transaction that best comports with Debtor's financial and business needs. The terms of the Sale Agreement accomplish these appropriate objectives, and thus Section 363(m) should be invoked to protect the good faith

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-001/796087_2

13

1  actions of the parties from further delay and prejudice in the event the Court's order granting the

2  Motion is appealed.

3  ### IV.
### CONCLUSION

4      WHEREFORE, Trustee respectfully requests that the Court enter an order: (1) approving

5  the sale of Debtor's membership interest in Housing Partners for the consideration outlined in the

6  Sale Agreement pursuant to Section 363; (2) authorizing pursuant to Sections 105(a) and 363(f),

7  the membership interest to be sold, conveyed, assigned, and transferred to Twinleaf under the

8  Sale Agreement free and clear of any interest in such property of an entity that may have existed

9  prior to the Closing (as defined in the Sale Agreement); (3) finding that the sale has occurred in

10  good faith and that Twinleaf is a good faith purchaser pursuant to Section 363(m); (4)

11  authorizing the entry into any other documents related to the Sale Agreement necessary to

12  consummate the sale contemplated therein; and (5) providing such further and other relief as the

13  Court deems just and proper.

14      DATED this 12 day of March, 2010.

15

16  GORDON SILVER

17  By: _____
GREGORY E. GARMAN, ESQ.
TALITHA B. GRAY, ESQ.
18  CANDACE C. CLARK, ESQ.
3960 Howard Hughes Pkwy., 9th Floor
19  Las Vegas, Nevada 89169
Attorneys for Lisa Poulin, Trustee for USA
20  Investment Partners, LLC

21

22

23

24

25

26

27

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

101202-001/796087_2